**IT IS SO ORDERED.**

**SIGNED THIS: April 28, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RICHARD and STEPHANIE GEIGER, | ) | No. 05-87505 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| RICHARD and STEPHANIE GEIGER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Adv. No. 06-8062 |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**O P I N I O N**

This matter is before the Court after trial on the complaint filed by the Debtors, Richard and Stephanie Geiger (collectively referred as the "DEBTORS" or individually as "RICHARD" and "STEPHANIE"), against the United States of America, Internal Revenue Service ("IRS"), seeking a determination that both RICHARD'S federal income tax liabilities for the years 1993, 1995, 1997, and 1998 and the DEBTORS' joint tax obligations

for 2000 and 2001 are discharged through their Chapter 7 bankruptcy filing. As an affirmative defense, the IRS asserted that the DEBTORS' tax liabilities are not dischargeable to the extent that they willfully attempted to defeat or evade payment of those taxes, pursuant to Section 523(a)(1)(C).

*BACKGROUND*

RICHARD is fifty-three years old and has no formal education beyond the tenth grade. From 1993 to 2001, working first in Ohio and later in Illinois, he was employed as a trader in the stock brokerage industry.[1] When RICHARD moved to Illinois because he was unable to find work in Ohio, he maintained a residence in Ohio because he believed that he would return at some point. From 1996 through the first part of 1997, he worked at American Investment Services, in East Peoria, Illinois. In late 1997 through 2001, he was employed by Sierra Brokerage Services, Inc. RICHARD admitted that beginning with the early 1990's, he had a costly addiction to cocaine, which consumed much of his disposable income. His use of cocaine slowed down when he got married in 1998. The DEBTOR did not timely file federal income tax returns for 1993, 1995, and 1997.

RICHARD and STEPHANIE married in February, 1998. STEPHANIE, who had a young child, was not employed during the early years of their marriage. The DEBTORS' son was born in August, 1998 and their daughter was born in 2000. The rental home occupied by the DEBTORS flooded several times and RICHARD'S mother, Agatha Geiger (AGATHA), offered to help the DEBTORS purchase a new home.[2]

---

[1] According to a background questionnaire admitted into evidence, RICHARD was first employed as an assistant trader from 1983-1987.

[2] According to RICHARD'S testimony, his grandmother had passed away in January, 2000, leaving his mother a considerable inheritance.

RICHARD and STEPHANIE maintained separate checking accounts at Morton Community Bank. RICHARD turned his commission checks over to STEPHANIE and she deposited those funds into the account which she maintained under her name as SG Consulting. The DEBTORS' personal expenses were paid from that account.

After marrying STEPHANIE, RICHARD'S drug use subsided. He also took steps to get right with the IRS. RICHARD retained the services of an accountant and obtained an extension of time to file his 1998 income tax return, and his individual income tax return was timely filed on May 17, 1999. That return disclosed $145,956 as adjusted gross income and tax due of $51,234. No payment was made with the return. RICHARD filed his 1993 income tax return on May 18, 1999, and in August of that year, he filed returns for 1995 and 1997.[3] Those returns showed the following total income and unpaid taxes:

| Tax Year | Adjusted Gross Income | Unpaid Tax |
|---|---|---|
| 1993 | $82,918 | $28,843 |
| 1995 | 35,855 | 9,932 |
| 1997 | 56,566 | 19,333 |

RICHARD made no payments when those returns were filed. Following the filing of the returns, the IRS issued statutory Notices of Assessment, on the dates and in the amounts as follows:

| Date | Tax Year | Amount of Notice |
|---|---|---|
| 06/14/99 | 1998 | $52,424.48 |
| 10/04/99 | 1993 | 64,843.38 |
| 10/11/99 | 1995 | 18,411.96 |
| 10/11/99 | 1997 | 28,355.89 |

---

[3] According to IRS records, RICHARD did not file income tax returns for 1994 or 1996, but the IRS makes no claim of unpaid taxes for those years. RICHARD testified that there were several years when he earned no income.

3

The IRS also issued notices of intent to levy. The DEBTORS had made two estimated tax payments each in the amount of $12,809 on July 13, 1999 and August 1, 1999, toward their 1999 income tax liability.

March 6, 2000, was a banner day for RICHARD. Based on a tip from a customer, he had previously acquired a block of shares of BluePoint stock, which was cleared for trading on that day. Other family members, including STEPHANIE, AGATHA and RICHARD'S brother, jumped on the bandwagon. By early afternoon, the trading account had profited by $600,000 on the first 100,000 shares that had been acquired. Sixty percent of that amount went to RICHARD. RICHARD purchased a 1999 Cadillac for $64,953 on March 24, 2000. The DEBTORS purchased a new home in May, 2000 for $237,805.46. According to RICHARD, his mother contributed $120,000 to the purchase price. Title to the residence was placed in STEPHANIE'S and AGATHA'S name. Over the ensuing months, the DEBTORS made many improvements to their new residence. They renovated the kitchen, installed a pool, purchased audio equipment, put up a fence, hired a landscaper, and replaced windows and carpet, spending no less than $75,000.[4] The DEBTORS' checking accounts for the months following March, 2000, show a considerable number of checks written for significant amounts. Looking back, RICHARD describes their spending as "completely amazing and ridiculous."

On March 17, 2000, the DEBTORS made a third estimated tax payment for 1999 in the amount of $12,500. The DEBTORS timely filed their joint income tax return for 1999 on April 15, 2000. The tax return showed adjusted gross income of $282,419 and income tax

---

[4] Ms. Atterberry reviewed the DEBTORS' bank accounts for these expenditures. According to the DEBTORS' answers to interrogatories, the DEBTORS spent $90,000 on home improvements.

4

of $107,644. A payment of $57,628 was made with the return. On July 29, 2000, the DEBTORS made a subsequent payment of $13,429.19, which included an estimated tax penalty of $1,154.45 and a failure to pay tax penalty of $118.98. That payment satisfied the DEBTORS' tax liability for 1999.

During 2000, the DEBTORS made four estimated tax payments for 2000 income taxes totaling $56,252, and a fifth one in April 2001 of $21,875. The DEBTORS obtained an extension for the filing of the 2000 return and timely filed a joint return for 2000 on August 14, 2001. The DEBTORS reported an adjusted gross income of $834,339 and a tax due of $324,483. No payment was made with the return. By November, 2001, the DEBTORS were broke. They obtained a mortgage against their home in the amount of $179,000, using $100,000 to make a payment on November 18, 2001, to the IRS on their 2000 tax liability and an estimated tax payment of $12,000 toward their 2001 tax liability. Although the DEBTORS obtained an automatic extension to file their 2001 return, they failed to meet that deadline and did not file the return until May 21, 2003. The DEBTORS reported adjusted gross income of $78,490 and tax due of $16,690.[5] On June 23, 2003, the IRS assessed an estimated tax penalty, a late filing penalty, a failure to pay tax penalty and interest. Around that same time, the U.S. Securities and Exchange Commission (SEC) brought suit against RICHARD and others arising out of the BluePoint stock trades.[6]

The DEBTORS filed a petition for relief under Chapter 7 of the Bankruptcy Code on November 10, 2005. Their schedules disclose that they have no nonexempt property other

---

[5] The 2001 return filed by the DEBTORS listed estimated tax payments in the amount of $20,340, exceeding their tax liability and the DEBTORS requested that the overpayment be refunded to them.

[6] The complaint alleges that RICHARD participated in a scheme to manipulate the price of BluePoint shares and seeks a disgorgement of the ill-gotten gains. The SEC has filed a claim against RICHARD for approximately $545,000 and up to $1,250,000 as a penalty.

5

than STEPHANIE'S interest in their two vehicles.  The DEBTORS scheduled priority tax claims of $17,650, listing the amount owed to the IRS for 2002, 2003 and 2004 income taxes as $17,000.  Unsecured claims totaled $587,696, consisting primarily of an amount owed to the IRS for 2001 and earlier income taxes of $504,255.  According to Schedule I, RICHARD was working as an Equity Trader for three years for a Chicago firm, grossing $3,000 per month.  Between the DEBTORS, they had monthly income of only $2,180, an amount insufficient to meet their expenses of $4,055. The Chapter 7 Trustee objected to the DEBTORS' claim of exemptions and sought turnover of the Cadillac and the nonexempt household goods.  The DEBTORS entered into a compromise with the Trustee, paying $9,877.50 for the estate's share of the nonexempt property, the funds were distributed to the IRS and the City of Columbus on their priority claims, and the DEBTORS were granted a general discharge.

The DEBTORS filed this adversary proceeding seeking to determine the dischargeability of their federal income tax liabilities for the year 2001 and preceding years.  The DEBTORS claim that the taxes are dischargeable because the returns were filed and the taxes were both due and assessed well outside the statutory lookback periods.[7]  The IRS objected, contending that the tax evasion exception applied.  A trial was held on December 4, 2007.  Amy Atterberry, a Revenue Officer employed by the IRS, testified as to the DEBTORS' tax liability, the history of their filings, payments, and the rendering of notices of deficiency against the DEBTORS.  She also examined the DEBTORS' available financial records.[8]

---

[7] Sections 523(a)(1) and 507(a)(8).

[8] RICHARD testified that his records were in the possession of the SEC.

6

Only RICHARD testified on behalf of the DEBTORS. RICHARD admitted that he knew that he had an obligation to file income tax returns for 1993, 1995, and 1997, and that he would owe income tax for each of those years. He testified that his failure to file tax returns in each of those years was due in part to his addiction to cocaine and to the expense of maintaining two residences. RICHARD testified that the accountant who prepared his tax returns did not offer any advice on how to deal with the delinquent tax liabilities.

RICHARD testified that in 2000, he believed that his good fortune would continue and that he would be able to pay the back taxes from future income. RICHARD was unable to account for the depletion of nearly $500,000. He testified that he helped out some of his relatives. At the time of trial, he was selling used cars.[9] The DEBTORS do not contest the amount of taxes, penalties, and interest claimed due by the IRS. Including taxes, penalties and interest, the amounts due as of December 4, 2007, for each tax year are as follows:

| Tax Period | Total Balance Due | Penalty Portion |
|---|---|---|
| 1993 | $111,922.30 | $14,908.92 |
| 1995 | 32,128.34 | 4,717.70 |
| 1997 | 51,961.65 | 9,183.17 |
| 1998 | 105,082.78 | 12,852.50 |
| 2000 | 273,612.44 | 42,516.72 |
| 2001 | 9,843.83 | 2,592.20 |
| Total | $584,551.34 | |

*ANALYSIS*

Debtors under Chapter 7 of the Bankruptcy Code are generally granted a discharge from all debts that arose prior to the filing of the bankruptcy petition. 11 U.S.C. § 727(b).

---

[9] As disclosed in their petition, the DEBTORS' income has decreased substantially. RICHARD'S gross income was $28,800 in 2003, $53,000 in 2004, and $29,000 for the first ten months of 2005. STEPHANIE'S gross income was $700 in 2003, $863 in 2004 and $600 for the first ten months of 2005.

7

In order to ensure that the "fresh start" policy does not extend to undeserving debtors, several exceptions to the general discharge exist. *See* 11 U.S.C. § 523(a). Section 523(a)(1)(C) provides that an individual debtor is not discharged from any debt for taxes "with respect to which the debtor . . . willfully attempted in any manner to evade or defeat such tax."[10] The modifying phrase "in any manner" commands an expansive interpretation and encompasses a broad range of conduct. *Dalton v. I.R.S.*, 77 F.3d 1297 (10th Cir 1996). Both actions to avoid assessment and to evade payment of taxes are encompassed by the exception. *Smith v. U.S.*, 202 B.R. 277 (S.D.Ind. 1996). The exception encompasses acts of commission as well as omissions. *In re Toti*, 24 F.3d 806 (6th Cir. 1994). The United States bears the burden of proving by a preponderance of the evidence that the debtor's tax liability is nondischargeable. *Matter of Birkenstock*, 87 F.3d 947, 951 (7th Cir. 1996).

Both parties rely on *Birkenstock*, the leading case in this Circuit which addresses the application of Section 523(a)(1)(C). Interpreting the language of the statute according to its plain meaning, the court held that the exception was comprised of both a conduct requirement - that the debtor attempted in any manner to evade or defeat a tax, and a mental state requirement - that the attempt was done willfully.[11] Noting that nonpayment of tax alone is insufficient to establish conduct aimed at evading or defeating taxes, the court opined that when nonpayment is coupled with a pattern of failure to file tax returns or with affirmative acts to conceal assets or shield income, a court may reasonably find that the conduct requirement is satisfied. *Id.* at 951-52. In determining whether the conduct

---

[10]The statute also excepts from discharge a debt for taxes with respect to which the debtor made a fraudulent return. 11 U.S.C. § 523(a)(1)(C). The United States does not contend that any of the DEBTORS' tax returns were fraudulent.

[11]Other circuits are in agreement with this interpretation. *In re Fretz*, 244 F.3d 1323 (11th Cir. 2001); *In re Fegeley*, 118 F.3d 979 (3rd Cir. 1997).

requirement is met the totality of the circumstances must be considered. The broad range of acts regarded as *indicia* of attempts at evasion of tax obligations include (1) understatement of income; (2) extensive dealings in cash; (3) inadequate record keeping; (4) intra-family transfers for insufficient consideration; (5) failure to acquire significant assets relative to earnings; and (6) a lavish and extravagant lifestyle. *In re Hamm*, 356 B.R. 263 (Bankr.S.D.Fla. 2006); *In re Klayman*, 333 B.R. 695 (Bankr.E.D.Pa. 2005).

Addressing the mental state requirement, the court in *Birkenstock* noted that a debtor's attempts to avoid paying taxes are considered to be willful if done voluntarily, consciously and intentionally. The mental state requirement is satisfied if the IRS establishes that the debtor (1) knew he had a duty to file income tax returns and pay taxes and (2) voluntarily and intentionally violated that duty. Because a debtor will rarely admit an intentional evasion of the obligation to pay taxes, courts have relied on well-defined "badges of fraud," which include: (1) the recurrence of the understatement of income for more than one tax year; (2) the understatement of income; (3) implausible or inconsistent explanations of behavior; (4) inadequate records; (5) transfer of assets to a family member; (6) transfer for inadequate consideration; (7) transfer which greatly reduces assets subject to IRS execution; and (8) transfers made in the face of serious financial difficulties. *In re Spiwak*, 285 B.R. 744 (S.D.Fla. 2002); *In re Sommers*, 209 B.R. 471 (Bankr.N.D.Ill. 1997); *In re Dube*, 169 B.R. 886 (Bankr.N.D.Ill. 1994). A debtor's dealings in currency is also considered a badge of fraud. *In re Hassan*, 301 B.R. 614 (S.D.Fla. 2003). The presence of multiple factors gives rise to a rebuttable presumption of willful evasion. *In re Peterson*, 317 B.R. 556 (Bankr.N.D.Ga. 2004). The IRS need not establish that the debtor had specific fraudulent

intent or a bad motive. *In re Lynch*, 299 B.R. 62 (Bankr.S.D.N.Y. 2003). The requirement of willfulness "prevents the application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are knowing and deliberate." *In re Birkenstock*, 87 F.3d at 952. The requirements for nondischargeability must be met with regard to each tax year. *Lynch*, 299 B.R. at 83.

## *RICHARD'S LIABILITIES*

RICHARD failed to timely file his income tax returns for 1993, 1995 and 1997. As the date loomed for filing his 1998 income tax return, RICHARD obtained an extension of time to file. He filed his 1998 return, showing adjusted gross income of $145,956 and tax due of $51,234 on May 17, 1999. The next day he filed his 1993 income tax return showing adjusted gross income of $82,918 and tax due of $28,843. On August 27, 1999, he filed both his 1995 income tax return, showing adjusted gross income of $35,855 and tax due of $9,932, and his 1997 income tax return, showing adjusted gross income of $45,455 and tax due of $19,333. While RICHARD timely filed his 1998 income tax return, he failed to make any payment of tax with the return. Nor did he make any payment of the tax liabilities on the returns for 1993, 1995 and 1997, when those returns were filed.

For the years 1993, 1995 and 1997, RICHARD'S failure to file his tax returns coupled with his failure to pay the taxes establishes that he attempted to evade his tax obligations for those years. Under *Birkenstock*, these acts of culpable omission are sufficient to satisfy the "conduct" requirement of the discharge exception. His tardy filing of those returns does not rectify his initial failure to file the returns and to pay the tax liability. *In re Volpe*, 377 B.R. 579 (Bankr.N.D.Ohio 2007). Turning to the willfulness requirement, RICHARD

acknowledged at trial that he knew he was required to file income tax returns for those years and that he was required to pay income taxes. He testified that his cocaine addiction during those years consumed all of his money and that he was maintaining two homes in hopes of returning to Ohio. To the extent that RICHARD contends that his addiction to cocaine compromised his ability to form an intent to act willfully, his contention is unavailing. *In re Berzon*, 145 B.R. 247 (Bankr.N.D.Ill. 1992) (finding that debtor acted willfully in failing to file tax returns not precluded by his drug abuse). Moreover, RICHARD'S claim that he lacked the ability to pay the taxes during the years at issue because of his expensive drug habit and his decision to maintain a residence in Ohio while living in Illinois, does not render his failure to pay the taxes involuntary and unintentional. He voluntarily chose to spend his income on things other than his tax liability. Additionally, maintenance of a second residence must be considered to be a discretionary expense. *Lynch*, *supra.* For 1998, even though the return was timely filed, the fact that no taxes were paid for the sixth year in a row is a strong indication that 1998 was just one more year in an ongoing pattern of evasion.

Even if RICHARD'S failure to file tax returns and to pay taxes for those years would be deemed insufficient absent evidence of affirmative acts of evasion, his subsequent actions leave no doubt that he has willfully attempted to evade payment of those taxes. As the evidence at trial disclosed, this case is more than a simple failure to pay taxes. The DEBTORS could have paid both RICHARD'S prior tax liabilities and their current tax liabilities during 1999 and 2000, when the DEBTORS' income exceeded one million dollars. The IRS contends the evidence establishes several "badges of fraud." Foremost, the

purchase of the residence in 2000 and placing title in STEPHANIE'S and AGATHA'S name, even though one-half of the purchase price was paid with the funds received by RICHARD from his broker commissions, evinces RICHARD'S attempt to evade collection of his existing tax liability. RICHARD has continued to live in the residence. In addition, the records maintained by the DEBTORS were inadequate. Checks written for significant amounts could not be explained. The DEBTORS admittedly engaged in a pattern of reckless spending. During 2000, the DEBTORS paid for renovations on the house owned by STEPHANIE and AGATHA that approached $100,000. Included in those improvements were a swimming pool ($30,000), audio equipment ($7,000), landscaping, renovation of the kitchen, and replacement of windows. RICHARD purchased a Cadillac for $65,000. He also transferred an undetermined sum to family members in need of financial assistance. These expenditures establish that RICHARD willfully attempted to evade and defeat his taxes for 1993, 1995, 1997, 1998 and 2000.

Although the DEBTORS had adjusted gross income of $78,490 in 2001, according to RICHARD they were "broke" by November 2001. Instead of filing their 2001 return by April 15, 2002, they obtained an extension to August 15, 2002, which they then missed, not filing until May 21, 2003. They did, however, make an estimated tax payment of $12,000 on November 19, 2001, which was short of satisfying their tax liability by only $4,690. RICHARD'S income declined precipitously after 2001. According to the Statement of Financial Affairs, RICHARD earned $28,800 in 2003 while STEPHANIE earned $700. In the Court's view, the substantial estimated tax payment paid in November 2001 evidences an intent to pay the 2001 taxes, a material difference from prior years. The Court determines

that the IRS has not carried its burden to prove that the DEBTORS willfully attempted to defeat or evade payment of the 2001 taxes.

RICHARD relies on *In re Haas*, 48 F.3d 1153 (11th Cir. 1995), where the court held that mere nonpayment of taxes, without more, does not constitute a willful attempt to evade or defeat payment of taxes.[12] In *In re Jacobs*, 490 F.3d 913, 922 (11th Cir. 2007), the court clarified its ruling in *Haas*, stating:

> In *Fretz*, this Court addressed the question "whether a debtor's intentional failure to file tax returns and to pay taxes owed to the Internal Revenue Service ('IRS') is sufficient, even without any supporting affirmative conduct, to show that he 'willfully attempted in any manner to evade or defeat [a] tax,' within the meaning of ... § 523(a)(1)(C)." *Fretz*, 244 F.3d at 1324-25. The Court held that it was, reasoning that "[the taxpayer's] failure to file returns distinguishes his situation from that of the debtor in *Haas* who did file returns each year, as required." *Id.* at 1329. Failure to file tax returns and to pay taxes satisfied § 523(a)(1)(C)'s conduct requirement, this Court held in *Fretz*, because "[s]ection 523(a)(1)(C) does not contain an affirmative conduct requirement," and "the modifying phrase 'in any manner'... covers attempts to evade or defeat a tax whether accomplished by 'acts of culpable omission [or] acts of commission.'" *Id.* at 1329 (citing *In re Fegeley*, 118 F.3d 979, 983 (3d Cir. 1997)). The Court held that Fretz had acted willfully in failing to pay taxes or file returns, because "[t]here is no evidence that [his] failure to file returns and pay taxes was due to inadvertence or mistake ...." *Id.* at 1331.

Reiterating the separateness of the "conduct" prong from the "willfulness" prong, the court stated that the conduct requirement was met where a debtor engages in affirmative acts to avoid the payment or collection of taxes, without a showing of a fraudulent scheme. The court concluded that the evidence "overwhelmingly" demonstrated the debtor willfully attempted to evade or defeat his taxes, noting that the debtor and his wife purchased a house and titled it solely in his wife's name, at a time when he owed significant back taxes.

---

[12] *Haas'* holding that Section 523(a)(1)(C) did not apply to attempts to evade or defeat *payment* of taxes was abrogated in *In re Griffith*, 206 F.3d 1389 (11th Cir. 2000).

The court determined that the conduct requirement was further satisfied by the debtor's large discretionary expenditures. It is clear from the court's decision in *Jacobs*, that *Haas* offers no sanctuary for RICHARD.[13]

RICHARD points to the DEBTORS' payment of $109,175.19 for 1999 taxes, $178,727 for 2000 taxes, and $12,000 for 2001 taxes. Partial payment of a debtor's tax liability, however, does not preclude a determination that the failure to pay the taxes in full was not voluntary or intentional. *In re Jacobs*, 490 F.3d 913 (11th Cir. 2007). Moreover, the payments made in a certain year for that year's taxes don't mitigate the nonpayment of taxes in prior or subsequent years. The DEBTORS did pay their 1999 taxes in a much more timely manner than previous years and the benefit of that is that there is no claim for that year. Similarly with 2001, the DEBTORS made a substantial payment that the Court considers a good faith effort so there is no liability for that year.

Tax year 2000 is a different story, however, because of the income windfall that could have been used to satisfy their tax liability, but wasn't. Although the DEBTORS did make four estimated tax payments in 2000 totaling $56,252, that amount was only 17% of the tax due of $324,483. In light of the size of the windfall, the Court regards the DEBTORS' payments during 2000 to be little more than token. Neither does RICHARD'S portrayal of his current financial circumstances as dire impact the result. An inability to

---

[13]RICHARD'S argument that the cases relied on by the IRS, all involving "bad actor," are inapposite because he does not fit in that category, is unavailing. Rejecting a similar argument, the court in *Lynch* stated:

> It is true that the great bulk of the cases in this area that have found nondischargeability have done so in the context of fairly egregious taxpayer acts, which would support a finding of willfulness under a standard requiring affirmative misconduct, or something more than the allocation of financial resources elsewhere. But none of these opinions indicate that application of the principles described above was dependent on the court's ability to find other taxpayer offenses as well. (Citations omitted).

299 B.R. at 83.

pay tax debts in subsequent years offers no defense to previous intentional attempts to evade one's tax liability. *Birkenstock*, 87 F.3d at 953. In conclusion, this Court finds that RICHARD willfully evaded his federal tax obligations for 1993, 1995, 1997, 1998 and 2000 and that his tax debt for those years is nondischargeable.

Although the principal amount of the taxes owed for those years, plus interest, is not dischargeable, the penalty amounts are treated differently. Under Section 523(a)(7), penalties payable to a governmental unit are dischargeable if the penalty is a tax penalty imposed with respect to a transaction or event that occurred more than three years before the date of the filing of the petition. 11 U.S.C. § 523(a)(7)(B). When Congress enacted the Bankruptcy Code, it intended to address taxes separately and distinctly from penalties with respect to discharge, with taxes being addressed in Section 523(a)(1) and penalties in Section 523(a)(7). *In re Allen,* 272 B.R. 913, 915 (Bankr.E.D.Va. 2002). The transactions that gave rise to the penalties in question all occurred more than three years before the date of the DEBTORS' petition. As such, the penalties are dischargeable under Section 523(a)(7) notwithstanding that the taxes and interest are not dischargeable.

*STEPHANIE'S LIABILITIES*

STEPHANIE did not appear at trial, despite being listed on both the DEBTORS' and the IRS' witness list. In closing argument, the DEBTORS argued that the IRS has failed to present any evidence of willful evasion on STEPHANIE'S part. Relying on *Birkenstock*, the DEBTORS contend that absent her testimony, the IRS' case against her must fail. Describing the spouse's role in *Birkenstock*, the court stated:

> [T]he only relevant evidence upon which the bankruptcy court rested its determination of Mrs. Birkenstock's willfulness was that she signed the

joint returns. Signing returns, however, is evidence that she had a legal tax duty; it is not necessarily evidence that she knew of that duty, nor that she deliberately sought to evade it. The record demonstrates that Mrs. Birkenstock has never held a job outside the home and that she does not take an active role in her family's financial or estate planning because she considers such matters not her responsibility. She does have a checking account, but it contains only a small amount of money that she uses to buy groceries and other inexpensive items. Although the government elicited testimony from her that she never paid any money toward her or her husband's back tax bills, mere nonpayment is not enough to satisfy the requirements of Section 523(a)(1)(C); rather, her only conduct directed toward evading or defeating tax liability was the filing of returns assigning personal income to the family trust. The government needed to put forth evidence that this evasion was willful, and it did not.

RICHARD and STEPHANIE married in 1998 and filed their first joint return together for 1999, a year for which all of their tax liabilities were paid. The IRS does not claim STEPHANIE is jointly liable for RICHARD'S tax liabilities for 1993, 1995, 1997 or 1998. It is only with respect to 2000 and 2001 that liability as to STEPHANIE is alleged. The court has already determined that RICHARD bears no willful evasion fault for 2001. That determination applies equally to STEPHANIE. So STEPHANIE is potentially on the hook only for the tax year 2000.

No explanation for STEPHANIE'S absence at trial was offered. The IRS did not claim surprise at her non-appearance. Neither did the IRS assert that she was required to appear and testify. The IRS made no mention of STEPHANIE in its closing argument, and made no argument that the evidence in the record supported a determination that she willfully attempted to evade the taxes due for 2000, which were attributable largely, if not wholly, to RICHARD'S income. Under these circumstances, the Court determines that the IRS has failed to carry its burden of proof with respect to STEPHANIE for the taxes due for 2000. Judgment will be entered for STEPHANIE.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###